UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RODERICK TATE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:16-CV-00093-JRG-DCP |
| | ) |
| CHERRY LINDAMOOD, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Roderick Tate, a Tennessee inmate proceeding *pro se*, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging a 2012 judgment imposed against him by the Criminal Court of Knox County, Tennessee. Having considered the submissions of the parties, the State-court record, and the law applicable to Tate's claims, the Court finds that the petition should be denied.

### I.
### Summary of Evidence & Procedural History

In 2011, a Knox County Grand Jury indicted Roderick Tate on 14 drug-related charges in case # 96378. *See* Doc. #38-3 at 79-84. At the time he was indicted, Tate was out on bond for a 2008 charge of possession of cocaine with intent to sell in Knox County case # 92685. *See* Doc. #38-2 at 59.

Attorney Josh Hedrick was appointed to represent Tate in both criminal cases. *See* Doc. #38-2 at 22. Hedrick had successfully represented Tate in a previous case where Tate was found not guilty of animal cruelty. *Id.* at 19-20, 49. The lead case and count (# 96378 count 7) against Tate involved the sale of .5 grams or more of cocaine within 1,000 feet of a preschool, a Class B felony for which Tate was classified a Range II offender.[1] *See* Doc. #38-3 at 9. Hedrick advised

---

[1] Tate was designated as a Range II offender for the felony because he had prior convictions for aggravated assault and aggravated statutory rape. *See* Doc. #38-3 at 48, 90; *see also* Tenn. Code Ann. § 40-35-106(c) ("A

Tate that the two drug-related cases would have to be served consecutively due to his being on bond from the first charge when the events giving rise to the second case occurred. Doc. #38-3 at 90. Assuming that Tate was sentenced concurrently in each case with the cases aligned consecutively, he was, according to his counsel, subject to a minimum punishment of 30 years at 100 percent and a maximum sentence of 50 years at 100 percent if convicted of all counts. Doc. #38-2 at 28.

After meeting with Tate several times, Hedrick engaged in plea negotiations with the State and presented Tate with a plea offer in December 2011. *See* Doc. #38-2 at 28, 73-76, 101. As part of the plea deal, the State offered Tate the opportunity to plead to a non-school zone drug offense in # 92685 for a sentence of 8 years at 35 percent, and to serve 12 years in # 96738 at the drug-free zone sentencing rate of 100 percent. Doc. #38-3 at 90-92. Counsel advised that Tate was given a "good offer" and advised him that his sentence could be much higher if he was convicted at trial. *Id*. at 92. At the time of the December 2011 offer, three separate trial dates were set to resolve Tate's charges, with the first trial date beginning February 1, 2012. Doc. #38-2 at 75.

Tate initially indicated that he wanted to accept a plea deal to serve the 20-year sentence, but he later decided that he wanted to reject the offer and hire another attorney. *Id*. at 75-77. Ultimately, however, Tate backed off his request for different counsel and asked Hedrick to get the State to re-offer a plea deal and resolve the case. *See id*. 103. By that time, the plea negotiations deadline had expired. *Id.* at 102. As a consequence for the missed deadline, the State added one year to its initial offer. *Id*. at 103. Tate opted to accept the 21-year offer rather than risk trial. *Id*.

After the parties reached an agreement, the trial court agreed to accept Tate's tardy plea, noting that failure to do so would necessitate five separate trials and compromise the identity of a confidential informant. *See* Doc. #38-3 at 8-9. In the lead case, Tate pleaded guilty to two counts of the sale of more than .5 grams of cocaine within 1,000 feet of a preschool (class B felonies),

---

defendant who is found by the court beyond a reasonable doubt to be a multiple offender shall receive a sentence within Range II.").

one count of the sale of less than .5 grams of cocaine (a class C felony), one count of the sale of .5 grams or more of cocaine (a class B felony), and sale of dihydrocodeinone (a class D felony). Doc. #38-3 at 9-10. Tate was sentenced in lead count 7 to 12 years as a Range II offender, with the other offenses in case # 96378 running concurrent to the lead count. *Id*. at 9. The remaining counts were dismissed pursuant to the plea agreement. *Id*. at 10.

Tate also pleaded guilty to possession of .5 grams or more of cocaine with intent to sell (a class B felony) as a Range I offender in case # 92685, with his sentence to be served consecutively to count 7 in the lead case. *Id*. at 10-11. This resulted in a total effective sentence of 21 years, with the first 12 years to be served at 100 percent, and the remaining balance to be served at 30 percent. *Id*. at 20.

During the plea hearing, the factual bases for Tate's pleas were recited, which included audio/visual recordings of drug transactions involving Tate, his co-defendant, and a confidential informant. Doc. #38-3 at 11-13. In case # 92685, the factual basis included the fact that a search of Tate's residence yielded a substance that field-tested positive for 1.2 grams of cocaine. *Id*. at 13.

The trial court questioned Tate extensively regarding whether he understood the charges against him. Doc. #38-3 at 14-20. Tate stated that he understood the agreed-upon sentence to be an effective 21 years, with 12 years to serve at 100 percent and 9 years to serve at 30 percent. *Id*. at 14-16. Tate agreed that the 21-year sentence was what he "signed for." *Id*. at 20. The trial court advised Tate of the rights he was waiving by pleading guilty, including his right to a jury trial, to confront witnesses, to a unanimous finding of guilt beyond a reasonable doubt, to present witnesses, and to an appeal. *Id*. at 16-20. Tate acknowledged these rights and confirmed that he was entering his pleas freely, voluntarily, and knowingly because he was, in fact, guilty. *Id*. After Tate verified that he had no questions and that he was satisfied with his attorney's representation, the trial court accepted Tate's pleas and sentenced him pursuant to the negotiated agreement. *Id*. at 20. The trial court ordered all counts from the indictment to be served concurrently to the lead

count, and that the sentence from the possession charge run consecutively to the indicted charges, resulting in an effective 21-year sentence. *Id*. at 21-22.

Thereafter, Tate filed a *pro se* petition for post-conviction relief with the trial court, and post-conviction counsel was later appointed and filed an amended petition. *See, e.g.*, Doc. #38-1 at 6, 90. A post-conviction hearing was held on September 19, 2014. Doc. #38-2. At the hearing, Tate testified that he was innocent and wanted to go to trial on the drug charges, but that Hedrick advised him to accept all the charges. *See, e.g., id*. at 18-38. Tate denied seeing laboratory reports or discovery materials but stated that he trusted his attorney's advice because Hedrick had successfully represented him in a past criminal case. *See id*. at 23-31.

Tate testified that counsel had incorrectly advised him that his potential punishment for the charges ranged from 30 to 50 years, and he stated that he only accepted the plea because the prospect of going to jail for that long "scared the crap" out of him. *Id*. at 31. Tate stated that counsel did not discuss his waiver of rights or his right to withdraw the plea, and that it was only after his imprisonment that he realized counsel had been mistaken as to his potential penalties. *Id*. at 38-40.

Hedrick testified that he met with Tate numerous times and reviewed evidence with him, conceding that Tate was "fairly consistent" in maintaining his innocence. *See, generally,* Doc. #38-2 at 73-101, 107. He advised Tate that they might win one or two charges, but that the video recordings would lead to some convictions. *Id*. at 81-82. Hedrick also advised Tate that the punishment after trial would be worse than that offered under the plea agreement. *Id*. 82. Hedrick testified that his notes reflected that Tate was visible in at least one video, but he conceded that the videos did not show Tate directly exchanging drugs or money. *Id*. at 85-87.

Hedrick stated that his advice to Tate included his incorrect belief that all drug-free zone charges would result in enhanced punishment, when, in fact, the charges against Tate carried no enhancement. Doc. #38-2 at 106. Hedrick agreed that if convicted at trial in both cases, Tate's "best-case scenario" was an effective 27-year sentence at 100 percent rather than the minimum of

4

30 years at 100 percent that he advised Tate. *Id*. at 100. He testified, however, that Tate could have received consecutive sentencing for the each of the different sales charged in case # 96378 if he had been convicted at trial. *Id*. at 100. Hedrick also disputed Tate's claims regarding the thoroughness of the plea review, stating that he reviewed the plea agreement with Tate "page by page" and had "no doubt" that Tate knew the consequences of his plea. *Id*. at 87, 104.

After the post-conviction hearing, the court took the matter under advisement, entering a written order on October 24, 2014, denying relief. Doc. #38-1 at 97-102. The post-conviction court noted that Hedrick had incorrectly advised Tate regarding the minimum sentence in the preschool case, as the minimum sentence for both cases would have been 27 years at 100 percent instead of 30 years at 100 percent. *Id*. at 98. It determined, then, that counsel's three-year error in calculating the minimum sentence was deficient but found that Tate nonetheless failed to show that his attorney's deficiency prejudiced him. *Id*. at 101. The post-conviction court noted:

> Based upon his own testimony, the Petitioner clearly was most interested in receiving the shortest length of time to serve as possible. He rejected a previous offer and then changed his mind. The State refused to extend the same offer and added a year onto the consecutive count. The Petitioner's acceptance of this longer sentence indicates that he clearly did not want to go to trial on this case. He received the minimum sentence possible on the school zone case and just one year above the minimum on the consecutive case. He was allowed to plead to two B felonies when he was facing multiple B felony offenses and an A felony. The Petitioner received the bargain he sought. If the Petitioner had been correctly advised as to the minimum sentence and sentencing rate on the charges he faced, the post-conviction court believes the Petitioner would have still accepted the offered settlement. Thus, the Petitioner has not established that he was prejudiced by any deficient performance by his attorney.

*See* Doc. #38-1 at 101-02. The court otherwise noted that Tate could have faced a potential punishment of 93 years if convicted, with the first 39 of those years to be served at 100 percent if all the separate offenses were run consecutively. *Id*. at 98. The court credited Tate's admission that he pled guilty to avoid a 50-year sentence and opined that Tate would have received a greater sentence if convicted on all counts at trial. *Id*. at 99. The court also accredited Tate's testimony at the guilty plea hearing that he was in fact guilty of the offenses. *Id*. The post-conviction court

5

found, however, that the original judgment listed the incorrect range on counts 7 and 11 in Case # 96378, as the judgment reflected Tate to be a Range I offender with 8 years to serve at 100 percent. *Id.* at 102. The court directed that a corrected judgment be prepared to reflect that the counts should assign Tate as a Range II offender, with 12 years to serve at 100 percent. *Id*. at 102.

Aggrieved, Tate appealed the post-conviction court's decision to the Tennessee Court of Criminal Appeals, which affirmed the judgment of the post-conviction court. *Tate v. State*, No. E2014-02153-CCA-R3-PC, 2015 WL 5176421 (Tenn. Crim. App. Sept. 3, 2015), *permission app. denied* (Tenn. Jan. 14, 2016). On or about February 24, 2016, Tate filed the instant action, raising, as later twice amended, the following grounds for relief, as grouped and condensed by Respondent:

Ground One: Ineffective assistance of trial counsel

Ground Two: Ineffective assistance of post-conviction counsel

Ground Three: Actual innocence

Respondent answered the amended petition on June 15, 2016. Doc. #15. Tate filed a reply to the answer on July 5, 2016. Doc. #16. On or about January 19, 2018, Tate moved to amend his petition to assert an innocence claim. Doc. #24. The Court granted the motion to amend, and Respondent submitted a response to Tate's amended petition on March 23, 2018. *See* Doc. #25 & Doc. #26. Tate's subsequent motions to amend and expand the record were denied by Order entered January 11, 2019. *See* Doc. #39. On January 14, 2019, Tate filed another motion to amend or expand the record. *See* Doc. #40.

## II.
## Tate's Motion to Expand the Record

Tate again seeks to amend or expand the record to include documents that purportedly support his claim of ineffective assistance of post-conviction counsel. *See* Doc. #40. In its January 11, 2019, Order denying Tate permission to expand his federal habeas record, the Court fully addressed the reasons expansion of the record is not permitted in in this case. *See* Doc. #39 at 3-

5. The Court finds no virtue in replicating that Order here, and therefore, Tate's motion to expand the record will be denied for the reasons set forth in the Court's prior Order. *See id.*

### III.
### Legal Standard

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal

habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the state court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance. *See id*. at 753. The prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted).

## IV.
### Ineffective Assistance of Counsel

Tate raises numerous claims alleging that he received constitutionally ineffective assistance from his trial and post-conviction counsel. Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. at 687. Deficiency is established when petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance with an effort to "eliminate

the distorting effects of hindsight." *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285-86 (6th Cir. 2010) (citation omitted). In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Strickland*, 466 U.S. at 687, 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). With these standards in mind, the Court considers Tate's ineffective assistance of counsel claims.

**A. Ineffective Assistance of Trial Counsel**

**1. Failure to provide accurate legal advice as to the calculation of sentences**

Tate argues that his trial counsel's failure to accurately calculate his minimum sentence exposure led him to enter a guilty plea that was not knowingly, intelligently, and voluntarily given.

A guilty plea bars most non-jurisdictional constitutional claims, thus requiring a valid plea to be knowingly, voluntarily, and intelligently entered. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by

9

competent counsel, may not be collaterally attacked."). When a defendant enters a guilty plea, he waives all claims of ineffective assistance of counsel except those that relate to the voluntariness of the plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Therefore, in order to show prejudice under *Strickland* in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (footnote omitted).

In making this assessment, courts ask "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" under the totality of the circumstances. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). These circumstances include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)).

In this case, the Court of Criminal Appeals agreed with the post-conviction court that counsel had incorrectly advised Tate regarding the minimum sentences for both cases, thereby constituting deficient performance, but it also agreed that Tate could not demonstrate that he was prejudiced by the deficiency. *Tate*, 2015 WL 5176421, at *5-8.

The only evidence in the record that suggests that Tate would have rejected the plea offer had he been correctly advised regarding the minimum sentence was his own testimony, which was not credited by the post-conviction court. Rather, he stated that he accepted the agreement to avoid the risk of a trial and offered no credible evidence that counsel's misstatement of the minimum sentence by three years affected his decision to accept the plea agreement. He was familiar with the plea process, as he had twice entered guilty pleas in prior cases. *See* Doc. #38-2 at 48-49. He

had also previously been through a criminal trial. *See, e.g., id*. at 49. Additionally, Tate could have faced a maximum of 93 years had he gone to trial in the instant cases, and he testified that he pleaded guilty because the thought of serving 50 years "scared the crap" out of him. Moreover, it is apparent that he understood and admitted the facts comprising the offenses to which he pleaded guilty, and that he understood the agreed-upon sentence.

Therefore, the Court finds that Tate has failed to demonstrate that the rejection of this claim involves an unreasonable application of clearly established federal law, or that it was based upon an unreasonable determination of facts in light of the evidence presented.

### 2. Failure to prepare a defense

Tate argues that his trial counsel failed to properly review the alleged video evidence against him, which would have demonstrated that there were no sales in the videos produced in discovery, that there were impermissible duplicate charges, and that there was available testimony from his co-defendant, Wynn, stating that he was responsible for the drugs at issue in case # 92685. He also claims that his trial counsel failed to object to the Range II drug-free zone sentence of 12 years at 100 percent, as that was not the plea agreement.

Respondent argues that this claim is procedurally defaulted, as Tate failed to raise it in State court. Tate concedes the claim is defaulted but asserts that because post-conviction counsel failed to raise this claim, the default is excused under the *Martinez* exception, which holds that the ineffective assistance of state post-conviction counsel may establish cause to excuse the procedural default of a claim of ineffective assistance of trial counsel, thereby allowing review of the federal claim. *Martinez v. Ryan*, 566 U.S. 1 (2012).

The Sixth Circuit has directed that claims arising under *Martinez* be analyzed as follows:

> (1) whether state post-conviction counsel was ineffective; (2) whether [the petitioner's] claims of ineffective assistance of counsel were "substantial[.]" . . . . Questions (1) and (2) determine whether there is cause. The next question is (3) whether [the petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [the petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits.

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (citation and internal citations omitted).

Respondent maintains that *Martinez* cannot be used to excuse Tate's default, as the exception only applies to the first occasion a petitioner has to raise an ineffective assistance of trial counsel claim. However, the Court finds that it need not resolve whether *Martinez* is applicable to this claim, as concerns of judicial economy urge this Court to consider whether the substantive claim of ineffective assistance of counsel is substantial enough to satisfy *Coleman*'s prejudice prong. *See, e.g., Thorne v. Hollway*, No. 3:14-cv-0695, 2014 WL 4411680, at *23 (6th Cir. 2015) ("[I]n many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*.").

The Court finds that Tate has not presented a substantial claim of ineffective assistance of counsel, as he cannot demonstrate actual prejudice resulting from counsel's alleged failures. First, Demetrius Wynn's testimony that he owned the cocaine found in Tate's apartment on one occasion has no relevance as to whether the drugs Tate sold belonged to him. Additionally, whether another person owned the drugs Tate was selling is inconsequential to and not an element of any charge to which Tate pleaded guilty. Therefore, Tate could have suffered no prejudice from counsel failing to offer Wynn's testimony.

Second, Tate argues that trial counsel should have moved to suppress the tapes made by the confidential informant before Tate pleaded guilty. However, even if the tapes had been suppressed, the State's confidential informant could have testified about the various drug sales. Moreover, trial counsel testified at the post-conviction hearing as to the tapes' quality and felt that some of them would indeed show his client participating in the sale of drugs. *See* Doc. #38-2 at 81-86. Accordingly, Tate cannot demonstrate prejudice from counsel's failure to raise these issues.

Finally, Tate made it abundantly clear in this case that he did not want to go to trial, even accepting a plea deal with an increased penalty after the first plea deal expired. He knew the sentence to be imposed if he pleaded guilty, and he agreed at sentencing that the sentence recited by the judge contained the agreement brokered with the State. He has failed to demonstrate a reasonable probability that he would not have entered his guilty plea if counsel had performed differently. Therefore, this claim must be dismissed.

### 3. Erroneous advice led to unknowing and involuntary plea

Tate claims that his trial counsel's erroneous advice regarding sentencing led him to enter a plea that was unknowing and involuntary. The Court has peripherally addressed the merits of this issue in Part III.A.1, *supra,* in considering whether counsel's failure to properly advise Tate regarding his minimum sentence exposure violated his right to the effective assistance of counsel. However, the Court finds that, as an independent claim, Tate raised this claim in his initial post-conviction proceeding but failed to carry it forward on appeal. *Tate*, 2015 WL 5176421, at *5 n.7 ("In his petition for post-conviction relief, the Petitioner also alleged that his guilty plea was unknowing and involuntary. Because he did not raise this claim in his brief to this court, we do not address it on appeal.").

A federal court generally may not grant a writ of habeas corpus on behalf of a state prisoner unless he has exhausted his available remedies by fairly presenting the same federal claim to the highest state court. 28 U.S.C. § 2254(b) and (c).[2] Where the claim has not been fairly presented to the state courts and a state remedy is no longer available, the claim is defaulted for purposes of habeas review. *See Coleman*, 501 U.S. at 731-32. Therefore, Tate's claim may not be reviewed unless he can demonstrate cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

---

[2] Presentation of an issue to the Tennessee Court of Criminal Appeals is sufficient for purposes of exhaustion under 28 U.S.C. § 2254(b). *See* Tenn. S. Ct. R. 39.

No cause for the default has been demonstrated in this case. The Court finds that *Martinez* cannot serve to excuse the procedural default of Tate's claim, as its holding only applies to post-conviction counsel's failure to raise a claim during an initial collateral review. *See West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) ("[*Martinez*] does not extend to attorney error at post-conviction *appellate* proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim.") (emphasis in the original). Here, Tate raised the claim in the initial review and failed to preserve it for appeal. Accordingly, this claim is defaulted and should be dismissed.

### 4. Failure to move to dismiss charges

Tate argues that his trial counsel should have moved to dismiss some of the charges against him relating to the sale of cocaine in drug-free zones, as the post-conviction court changed his sentence from a mandatory minimum of 8 years as a Range I offender to a 12-year sentence as a Range II offender. Tate maintains that his plea is voided by the court's alteration of the judgment, as well as by counsel's failure to address the issue.

Respondent notes that Tate never raised this claim during any State-court proceeding, and that the claim would now be procedurally barred in State court, thus rendering it technically exhausted. This Court agrees. Tate's claim is procedurally defaulted. *See Coleman*, 501 U.S. at 730-32; Tenn. Code Ann. § 40-30-102(a) (1-year statute of limitations) and Tenn. Code Ann. § 40-30-102 (c) (limiting movant to one petition); *see also* Tenn. R. App. P. 4 (allowing 30 days for notice of appeal).

The Court alternatively determines that Tate's claim would not warrant federal habeas relief upon a merits review. Though the corrected judgment is not a part of the record in this case, the record otherwise verifies that the post-conviction court indeed entered a corrected judgment as to the lead count, to which all other counts in the lead case ran concurrently. *See* Doc. #38-1 at 102. The lead case and count against Tate involved the sale of .5 grams or more of cocaine within 1,000 feet of a preschool, a Class B felony. Tate was, based on his prior convictions, a Range II

offender. Therefore, Tate was statutorily required to serve the minimum sentence at 100 percent. *See* Tenn. Code Ann. § 39-17-432(c). The minimum sentence for the lead count was not less than 12 years. *See* Tenn. Code Ann. § 40-35-112(b)(2). Moreover, Tate verified in open court that his intention was to plead guilty to serve 12 years at 100 percent and 9 years at 30 percent. *See, e.g.*, Doc. #38-3 at 20. Accordingly, the judgment entered by the post-conviction court merely corrected a recording error that did not modify the substance of the agreement reached by the parties and confirmed in open court. *See* Tenn. R. Crim. P. 36; *State v. Brown*, 479 S.W.3d 200, 213 (Tenn. 2015) (finding trial court maintains power to correct error in recording defendant's sentence under Rule 36, and that in determining whether an error has been made, the transcript of the trial court's statements resolves conflict). Therefore, this claim must be dismissed as defaulted, and relief is not otherwise warranted.

### 5. Failure to have Tate's mental competency evaluated

Tate claims that his trial counsel rendered ineffective assistance in failing to investigate his claims of mental illness before, during, and after his plea negotiations. He also alleges that he was on a host of medications at the time, and the trial judge never asked him during his plea if he was under the influence of any medications.

Tate raised this claim in his initial post-conviction proceedings, but it does not appear that he carried the claim forward on appeal of those proceedings. Because Tennessee's time and successive petition bars would now prevent review of this claim, it is defaulted for purposes of habeas review. *See Coleman*, 501 U.S. at 730-32; *see also* Tenn. Code Ann. § 40-30-102(a) (1-year statute of limitations) and Tenn. Code Ann. § 40-30-102 (c) (limiting movant to one petition).

Further, the Court finds that *Martinez* cannot serve to excuse the procedural default of Tate's claim, as its holding only applies to post-conviction counsel's failure to raise a claim during an initial collateral review. *See West*, 790 F.3d at 698 ("[*Martinez*] does not extend to attorney error at post-conviction *appellate* proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel

claim.") (emphasis in the original). Because Tate failed to present this claim in accordance with the requirements of § 2254, it must be dismissed.

## B. Ineffective Assistance of Post-conviction Counsel

Tate claims that post-conviction counsel rendered ineffective assistance by failing to raise a claim relating to the field tests of the cocaine confiscated during the controlled drug buys.[3]

However, the Supreme Court has held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Absent a constitutional right to a post-conviction process, there can be no federal remedy for defects in that process. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (quoting *Pennsylvania v. Finely*, 481 U.S. 551, 559 (1987)) ("The State . . . has more flexibility in deciding what procedures are needed in the context of postconviction relief. '[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.'"). Accordingly, Tate cannot claim constitutionally ineffective assistance in post-conviction proceedings, and this claim is not cognizable on federal habeas review.

## V.
## Actual Innocence

Tate argues that he is actually innocent of the multiple counts to which he pleaded guilty, noting in particular that trial counsel could have called his co-defendant, Demetrius Wynn, in case # 92685 to establish that the drugs associated with that charge belonged to Wynn.

In a federal habeas proceeding, the only cognizable grounds for relief are those that allege a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

---

[3] Though Tate's claim is not clear, it appears that he is arguing that he was improperly charged with a Class B felony when the quantity of drugs as tested showed they should have been treated as a Class C felony.

Currently, the "actual innocence" doctrine only serves as a mechanism to overcome procedural default of a claim; it has not been recognized as a free-standing constitutional claim in a habeas proceeding. *Herrera v. Collins*, 506 U.S. 390, 416-17 (1993); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief on a freestanding claim of actual innocence."). Therefore, Tate's claim that Wynn's testimony could establish his innocence must be dismissed as a non-cognizable claim.

Moreover, to the extent that Tate argues that he received ineffective assistance of post-conviction counsel for his failure to raise this claim, such a claim is similarly not cognizable, as there is no constitutional right to such counsel. *See* 28 U.S.C. § 2254(i); *Wallace v. Sexton*, 570 F. App'x 443, 454 (6th Cir. 2014) ("The Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim.").

Finally, as trial counsel noted at the post-conviction hearing, Wynn's ownership of the drugs would not otherwise exonerate Tate of possession in his home. *See* Doc. #38-2 at 89. Therefore, this claim must be dismissed.

## VI.
## Certificate of Appealability

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## VII.
## Conclusion

For the reasons set forth above, Roderick Tate's motion to amend or expand the record in this case [40] is **DENIED**, and Tate has failed to demonstrate an entitlement to federal habeas relief. Therefore, it is hereby **ORDERED** that Tate's petition for a writ of habeas corpus is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**. It is **FURTHER ORDERED** that a certificate of appealability from this decision is **DENIED**. A final judgment will issue separately.

So ordered.

ENTER:

                                            s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE